# IN THE SUPREME COURT, STATE OF WYOMING

## 2013 WY 10

*October Term, A.D. 2012*

*January 30, 2013*

|  |  |
|---|---|
| BOARD OF PROFESSIONAL RESPONSIBILITY, WYOMING STATE BAR,<br><br>Petitioner,<br><br>v.<br><br>RONALD G. PRETTY, WSB #5-1466,<br><br>Respondent. | D-13-0001 |

## ORDER OF PUBLIC CENSURE

[¶1]    **This matter** came before the Court upon a "Report and Recommendation for Public Censure by Consent," filed herein January 3, 2013, by the Board of Professional Responsibility for the Wyoming State Bar.  The Court, after a careful review of the Board of Professional Responsibility's Report and Recommendation, the Affidavit of Costs and Expenses, and the file, finds that the Report and Recommendation should be approved, confirmed and adopted by the Court, and that Respondent Ronald G. Pretty should be publicly censured for his conduct, which is described in the attached Report and Recommendation for Public Censure by Consent.  It is, therefore,

[¶2]    **ADJUDGED AND ORDERED** that the Board of Professional Responsibility's Report and Recommendation for Public Censure by Consent, which is attached hereto and incorporated herein, shall be, and the same hereby is, approved, confirmed, and adopted by this Court; and it is further

[¶3]    **ADJUDGED AND ORDERED** that Ronald G. Pretty is hereby publicly censured for his conduct; and it is further

[¶4]     **ORDERED** that, on or before July 1, 2013, Mr. Pretty shall complete four (4) hours of continuing legal education on the subject of ethics; and it is further

[¶5]     **ORDERED** that, pursuant to Section 26 of the Disciplinary Code for the Wyoming State Bar, Mr. Pretty shall reimburse the Wyoming State Bar the amount of $1,857.89, representing the costs incurred in handling this matter, as well as pay the administrative fee of $500.00. Mr. Pretty shall pay the total amount of $2,357.89 to the Clerk of the Board of Professional Responsibility on or before April 1, 2013; and it is further

[¶6]     **ORDERED** that the Clerk of this Court shall docket this Order of Public Censure, along with the incorporated Report and Recommendation for Public Censure, as a matter coming regularly before this Court as a public record; and it is further

[¶7]     **ORDERED** that, pursuant to Section 4(a)(iv) of the Disciplinary Code for the Wyoming State Bar, this Order of Public Censure, along with the incorporated Report and Recommendation for Public Censure, shall be published in the Wyoming Reporter and the Pacific Reporter; and it is further

[¶8]     **ORDERED** that the Clerk of this Court cause a copy of this Order of Public Censure to be served upon Respondent Ronald G. Pretty.

[¶9]     **DATED** this 30th day of January, 2013.


**BY THE COURT:***

/s/

**MARILYN S. KITE**
**Chief Justice**


*Justice Voigt took no part in the consideration of this matter. Retired Justice Michael Golden participated by assignment.

D-13-0001

# IN THE SUPREME COURT
## OF THE STATE OF WYOMING

IN THE SUPREME COURT
STATE OF WYOMING
FILED

JAN - 3 2013

CAROL THOMPSON, CLERK
by CHIEF DEPUTY

| | |
|---|---|
| *In the matter of* | ) |
| *Ronald G. Pretty* | ) |
| *WSB No. 5-1466* | ) |
| | )    *Docket No. WSB 2012-85* |
| *Respondent.* | ) |
| | ) |

---

## REPORT AND RECOMMENDATION FOR PUBLIC CENSURE BY CONSENT

---

THIS MATTER having come before the Board of Professional Responsibility of the Wyoming State Bar for hearing on December 21, 2012, and Respondent having stipulated to this Report and Recommendation as evidenced his testimony at the hearing and by the signature hereon of Respondent and his counsel, FINDS, CONCLUDES AND RECOMMENDS as follows:

### Findings of Fact

1. Respondent Ronald G. Pretty is an attorney licensed to practice law in Wyoming since 1975.

2. On March 24, 2012, Respondent met with and agreed to undertake the representation of a client with respect to a matter. Respondent accepted a $2,500 fee retainer from the client.

3. Respondent thereafter failed to perform the work he had undertaken and did not return telephone calls on the matter, causing the client to terminate Respondent's representation in early May, 2012.

1

4.   When Respondent did not return the unearned retainer and failed to return telephone inquiries, the client filed a disciplinary complaint.

5.   On July 9, 2012, Bar Counsel wrote to Respondent and provided him with a copy of the complaint. Respondent was asked to submit a written response on or before July 23, 2012.

6.   Having received no response from Respondent, Bar Counsel wrote on August 2, 2012, again requesting Mr. Pretty's written response to the complaint and reminding Respondent of his obligation to cooperate with Bar Counsel's request pursuant to Section 2(c) of the Disciplinary Code.

7.   On August 6, 2012, Bar Counsel received a fax from Respondent stating:

I apologize for not responding instantly.

I know that I am to cooperate.

However; sometimes:

a. I am extremely busy (Pet for Cert, breaking up happy homes, Brief to 10th, etc).
b. Have office staff problems (employee quit & 2 secretary office, driver – 1).
c. I so enjoy getting letters from the State Bar marked Personnel – Confidential and I put this at the bottom of the pile instead of the top.

Please forgive me and give me some more time.

8.   On August 7, 2012, Bar Counsel wrote to Respondent and asked for his written response to the complaint no later than August 15, 2012.

9.   On August 10, 2012, Bar Counsel received a hand-delivered, unsigned letter from Respondent stating:

I took on the job of doing a past corrections relief for [Respondent's client]. I told them that I had never done one before but that I wanted to expand my practice.

2

I attended by telephone a lecture, given by Mr. Goody. There I heard of a book to learn how to do post conviction relief cases. I told my secretary to order the book. She didn't. I was waiting for the book to send to the client with a complete refund.

Please find the enclosed refund.

Enclosed with the letter was Respondent's check made payable to Respondent's client in the amount of $2,500.

10. On August 16, 2012, Bar Counsel wrote to Respondent proposing stipulated discipline, and asking for Respondent's written response on or before August 30, 2012.

11. When Respondent had not made a timely response to Bar Counsel's letter, and upon the further request of the complainant, Bar Counsel forwarded the refund check to the client on September 11, 2012.

12. Despite the termination of Respondent's services and Respondent's refund of the $2,500 fee, Respondent continued to send billing statements to the client showing a "balance due" of $425.00, consisting of:

|  | Professional Services | Hrs/Rate | Amount |
|---|---|---|---|
| 4/12/2012 | Conf as to 2254 procedure | 1.00 200.00/hr | 200.00 |
| 4/17/2012 | TC with Goody | 0.50 200.00/hr | 100.00 |
|  | For professional services rendered | 1.50 | $300.00 |
| 4/17/2012 | Additional charges: cost of conf – 65; cost of call – 60 |  | 125.00 |
|  | Balance due |  | $425.00 |

13. Respondent's conduct violated Rule 1.1, which provides, "A lawyer shall provide competent representation to a client. Competent representation requires the legal

knowledge, skill, thoroughness and preparation reasonably necessary for the representation." Respondent violated this rule when he undertook to represent a client in a matter in which he lacked the legal knowledge reasonably necessary for the representation.

14. Respondent's conduct violated also Rule 1.3, which provides, "A lawyer shall act with reasonable diligence and promptness in representing a client." Respondent violated this rule when he failed to perform the services for his client with reasonable diligence and promptness, resulting in the termination of Respondent's services.

15. Respondent's conduct also violated Rule 1.4, which requires a lawyer to maintain appropriate communication with a client. Respondent violated this rule when he failed to return numerous telephone calls from his client, resulting in the termination of Respondent's services.

## Conclusions of Law

16. The American Bar Association's "Standards for Imposing Lawyer Discipline" (hereafter referred to as the "ABA Standards") state, "The purpose of lawyer discipline proceedings is to protect the public and the administration of justice from lawyers who have not discharged, will not discharge, or are unlikely properly to discharge their professional duties to clients, the public, the legal system, and the legal profession." ABA **Standard 3.0** lists the factors to be considered in imposing a sanction after a finding of lawyer misconduct:

(a) the duty violated;

(b) the lawyer's mental state;

(c) the potential or actual injury caused by the lawyer's misconduct; and

(d) the existence of aggravating or mitigating factors.

4

17. Respondent's misconduct falls within the heading "Violation of Duties Owed to Clients," which the ABA Standards subcategorize (pertinent to this matter) as "Lack of Diligence" (Standard 4.4), and "Lack of Competence" (Standard 4.5).

18. The ABA Standards point toward a public censure (referred to in the ABA Standards as a "reprimand") for Respondent. Section 4.43 states, "Reprimand is generally appropriate when a lawyer is negligent and does not act with reasonable diligence in representing a client, and causes injury or potential injury to a client." Section 4.53 states, "Reprimand is generally appropriate when a lawyer: (a) demonstrates failure to understand relevant legal doctrines or procedures and causes injury or potential injury to a client; or (b) is negligent in determining whether he or she is competent to handle a legal matter and causes injury or potential injury to a client.

19. ABA Standard 9.0, entitled "Aggravation and Mitigation," provides as follows:

9.1 *Generally*

After misconduct has been established, aggravating and mitigating circumstances may be considered in deciding what sanction to impose.

9.2 *Aggravation*

9.21 *Definition.* Aggravation or aggravating circumstances are any considerations or factors that may justify an increase in the degree of discipline to be imposed.

9.22 *Factors which may be considered in aggravation.* Aggravating factors include:
(a) prior disciplinary offenses;
(b) dishonest or selfish motive;
(c) a pattern of misconduct;
(d) multiple offenses;
(e) bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with rules or orders of the disciplinary agency;
(f) submission of false evidence, false statements, or other deceptive practices during the disciplinary process;
(g) refusal to acknowledge wrongful nature of conduct;
(h) vulnerability of the victim;
(i) substantial experience in the practice of law;

5

(j) indifference in making restitution; and

(k) illegal conduct, including that involving the use of controlled substances.

9.3    *Mitigation.*

9.31    *Definition.* Mitigation or mitigating circumstances are any considerations or factors that may justify a reduction in the degree of discipline to be imposed.

9.32    *Factors which may be considered in mitigation.* Mitigating factors include:

(a) absence of a prior disciplinary record;

(b) absence of a dishonest or selfish motive;

(c) personal or emotional problems;

(d) timely good faith effort to make restitution or to rectify consequences of misconduct;

(e) full and free disclosure of disciplinary board or cooperative attitude toward proceedings;

(f) inexperience in the practice of law;

(g) character or reputation;

(h) physical disability;

(i) mental disability or chemical dependency including alcoholism or drug abuse when:

(1) there is medical evidence that the respondent is affected by a chemical dependency or mental disability;

(2) the chemical dependency or mental disability caused the misconduct;

(3) the respondent's recovery from the chemical dependency or mental disability is demonstrated by a meaningful and sustained period of successful rehabilitation; and

(4) the recovery arrested the misconduct and recurrence of that misconduct is unlikely.

(j) delay in disciplinary proceedings;

(k) imposition of other penalties or sanctions;

(l) remorse; and

(m) remoteness of prior offenses.

9.4    *Factors Which Are Neither Aggravating nor Mitigating.*

The following factors should not be considered as either aggravating nor mitigating:

(a) forced or compelled restitution;

(b) agreeing to the client's demand for certain improper behavior or result;

(c) withdrawal of complaint against the lawyer;

(d) resignation prior to completion of disciplinary proceedings;

(e) complainant's recommendation as to sanction; and

(f) failure of injured client to complain.



20.     The following aggravating factors are present in Respondent's case: (c) a pattern of misconduct; (d) multiple offenses; (e) bad faith obstruction of the disciplinary process by intentionally failing to cooperate with Bar Counsel's investigation; (g) refusal to acknowledge the wrongful nature of the conduct; (h) vulnerability of victim; and (i) substantial experience in the practice of law.

21.     The following mitigating factor is present in Respondent's case: (a) absence of a prior disciplinary record.

Recommendation

The Board recommends that the Court enter an order:

1.     Administering a public censure to Respondent pursuant to Section 4(a)(iii) of the Disciplinary Code for the Wyoming State Bar, for violation of Rules 1.1, 1.3, and 1.4 of the Wyoming Rules of Professional Conduct;

2.     Directing Respondent to undergo four (4) hours of continuing legal education in ethics;

3.     Ordering Respondent to pay the $500 administrative fee required by Section 26(e) to the Wyoming State Bar; and

4.     Ordering Respondent to reimburse the Wyoming State Bar for costs incurred in this matter.

DATED this 21st of December, 2012.

BOARD OF PROFESSIONAL RESPONSIBILITY OF
THE WYOMING STATE BAR

By_____
Jenifer E. Scoggin, Chair

7

So stipulated:

_____

Ronald G. Pretty, Respondent

_____

Bert Ahlstrom, Jr., Respondent's Counsel